AO 91 (Rev. 01/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Ever ROMERO-Martinez | ) | Case No.  2:25-mj-452 |
| | ) | |
| _____ | ) | |
| *Defendant* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of ___07/18/25___ in the county of ___Franklin___ in the ___Southern___ District of ___Ohio___ , the defendant violated ___18___ U. S. C. § ___922(g)(5)(A___ , an offense described as follows:

Possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5)(A).

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jeffrey R. Landthorn, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  August 4, 2025
_____

City and state:  ___Columbus, Ohio___

_____
Kimberly A. Jolson
United States Magistrate Judge

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Jeffrey Landthorn (your affiant), being duly sworn, depose and state as follows:

## I.      INTRODUCTION

1.  Your affiant is a Special Agent with the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI) currently assigned to the Columbus, Ohio office. Your affiant obtained a Bachelor of Science in Business Administration (Finance) from the Ohio State University in 2001 and completed both the Federal Criminal Investigator Training Program (CITP) and the Immigration and Customs Enforcement (ICE) Special Agent Training (ICESAT) Academy at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia in 2004. During CITP and ICESAT, your affiant was instructed in all phases of criminal investigation such as: Criminal Law, Search and Seizure, Field Enforcement Techniques, Firearms Proficiency, Interviewing, and Evidence. During his twenty-one-year career as a Special Agent, your affiant has conducted and participated in myriad investigations involving numerous different violations of the U.S. Criminal Code, to include immigration and firearms related matters.

2.  Your affiant is submitting this affidavit in support of a Criminal Complaint authorizing the arrest of the following individual for violating 18 USC § 922(g)(5)(A), being an alien unlawfully in the United States in possession of a firearm, affecting interstate commerce:

    a.  Ever ROMERO-Martinez, DOB: 12/26/1992, who is currently in Immigration and Customs Enforcement (ICE) custody, incarcerated at the Butler County, Ohio Jail, located at 705 Hanover Street Hamilton, Ohio 45011.

3.  Your affiant's statements in this affidavit are based on your affiant's personal knowledge and experience, a review of documents and databases, as well as information received from other agents and officers involved in this investigation from ICE, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, (ATF), the Drug Enforcement Administration (DEA), and the Internal Revenue Service-Criminal Investigation Division (IRS-CID). Since this affidavit is being submitted for the limited purpose of securing an arrest warrant, your affiant did not include each and every fact known concerning this investigation. However, your affiant did not withhold any information or evidence that would negate probable cause. Your affiant set forth only the facts that are believed to be necessary to establish probable cause.

4.  Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that a violation of 18 U.S.C. §922(g)(5)(A) has been committed by ROMERO-Martinez.

## II. INVESTIGATION AND PROBABLE CAUSE

5.  On the morning of July 18, 2025, DEA, ATF, and IRS-CID Special Agents and an ICE Deportation Officer (all collectively hereto forth referred to as agents) began surveillance at 2574 Vanderberg Avenue Columbus, Ohio 43204, the home address of ROMERO-Martinez, with the intention of locating and arresting ROMERO-Martinez on administrative immigration charges.

6.  At approximately 6:10 AM, agents observed ROMERO-Martinez exit the home, enter the driver's door of a red Chevrolet pickup truck, and drive away from the residence. Agents followed the truck to an apartment on Parkwick Drive in Columbus, where a man later identified as ROMERO-Martinez' brother Obed Romero-Martinez (Obed) entered the front passenger door of the truck. Agents followed the truck to just outside of the gated entrance of a construction site on Cemetery Road in Hilliard, Ohio, where the truck was one of several vehicles waiting in a line to get into the site.

7.  Agents, who were wearing clearly-visible law enforcement markings, activated their red and blue emergency vehicle lights, pulled their vehicles up to the truck, exited, and surrounded the truck, identifying themselves to the occupants. Agents asked ROMERO-Martinez and Obed to exit the truck, they did so (ROMERO-Martinez out of the driver door, Obed out of the passenger door), and the agents took them into custody. While removing Obed from the vehicle out of the passenger door, DEA Special Agent Haag observed a silver revolver in plain view on the front passenger floorboard of the truck. Deportation Officer Salmon asked Obed what he was doing with a gun, and ROMERO-Martinez, having heard this question to Obed, immediately uttered that the gun belonged to him (ROMERO-Martinez). Agents then secured the revolver, which was found to have no rounds in any of the cylinders, in one of their vehicles. Agents placed ROMERO-Martinez and Obed in their vehicles and brought them to the Columbus, Ohio ICE office to book them in as part of the removal process.

8.  At the Columbus ICE office, two HSI Special Agents took custody of the revolver, which bears serial number LS89309, photographed it, and secured it in the HSI evidence room.

9.  At the Columbus ICE office, a Deportation Officer rolled ROMERO-Martinez's fingerprints, which were then searched in ICE and National Crime Information Center (NCIC) databases. The fingerprint search yielded no results of any previous immigration-related encounters. However, the fingerprints did present NCIC results (Federal Bureau of Investigation, or FBI, number N8M34DJW4), relating to ROMERO-Martinez's previous criminal law enforcement arrests in Ohio.

10. At the Columbus ICE office, ROMERO-Martinez told the Deportation Officer that he is a Mexican citizen, was born in Guerrero, Mexico, and that he last entered the U.S. without permission or detection in 2015 at an unknown place on the Mexico-Texas border.

11. The Deportation Officer served ROMERO-Martinez with a Notice to Appear (NTA), which ROMERO-Martinez signed, that listed the following allegations:

a. "You are not a citizen or national of the United States. You are a native of Mexico and citizen of Mexico. You entered the United States at or near an unknown place, on or about an unknown date. You were not then admitted or paroled after inspection by an Immigration Officer."

12. The two HSI Special Agents then interviewed ROMERO-Martinez, using Lionbridge, a telephonic interpretation service, as ROMERO-Martinez's primary language is Spanish. The interview was recorded (audio only) by HSI. ROMERO-Martinez was read his Miranda rights and was informed that HSI wished to speak with him about the revolver, and he subsequently waived his Miranda rights, both verbally and by signing a Miranda rights form.

13. ROMERO-Martinez stated the following about the revolver:

a. When the events of the morning were discussed, specifically the discovery of the revolver, he recalled that he immediately verbally claimed ownership of the revolver at the time.
b. He purchased the revolver two weeks ago for $400 cash from a coworker.
c. When specifically asked if the revolver actually belonged to his brother (due to the fact that it was found in front of the seat where his brother was sitting) and he was only claiming ownership of it in order to protect his brother, he responded that it belonged to him (ROMERO-Martinez) and that he (ROMERO-Martinez) put it under the front passenger seat the previous night.

14. HSI Special Agents then drove, with ROMERO-Martinez navigating, to the house in which ROMERO-Martinez purchased the revolver, where he identified the house.

15. On July 24, 2025, your affiant queried ROMERO-Martinez's information in various DHS databases and found no record (other than the July 18, 2025, ICE encounter) of any previous DHS encounters of ROMERO-Martinez. Your affiant also checked to see if ROMERO-Martinez has ever applied to enter the United States, or if he has ever applied for any type of benefit that would afford him lawful immigration status, and no such records were found.

16. On August 1, 2025, your affiant was advised by ATF Special Agent Benner that the firearm seized from ROMERO-Martinez was not manufactured in the state of Ohio, and therefore, traveled in and affected interstate commerce. Your affiant has been informed that Special Agent Benner has training and experience in the interstate nexus analysis of firearms.

### III. CONCLUSION

17. Based on my knowledge, training and experience, that of other agents and officers with whom your affiant has conferred, and the facts set forth herein, there is probable cause to believe Ever ROMERO-Martinez, has violated 18 U.S.C. § 922(g)(5)(A). Therefore,

your affiant respectfully requests this court issue an arrest warrant for the above
individual.

Further, your affiant sayeth naught.

_____

Jeffrey Landthorn
Special Agent, Homeland Security Investigations


Subscribed and sworn to before me

This ____4th____ day of ____August____ , __2025__ .


_____

Kimberly A. Jolson
United States Magistrate Judge

4